# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN K. FOSTER, III, )<br>  )<br>  Plaintiff. )<br>  )<br>  v. )<br>  )<br> WESTCHESTER FIRE INSURANCE )<br> COMPANY; THE PLUS COMPANIES, )<br> INC.; and LOUELLA YAVORKA, )<br>  )<br>  Defendants. ) | Civil Case No. 09-1459 |

## MEMORANDUM OPINION

CONTI, District Judge.

## I.    INTRODUCTION

Pending before the court are cross-motions for summary judgment (ECF Nos. 39, 42) filed by plaintiff John K. Foster, III, ("plaintiff" or "Foster") and defendants Westchester Fire Insurance Company ("Westchester") and The Plus Companies, Inc. ("Plus Companies" and together with Westchester ,"defendants") seeking judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56 with respect to all claims asserted in plaintiff's complaint (ECF No. 1-3 at 3–17).   Plaintiff asserted claims seeking 1) enforcement of an insurance policy pursuant to the Pennsylvania Declaratory Judgments Act, 42 PA. CONS. STAT. §§ 7531–41, 2) damages resulting from an alleged breach of contract, and 3) damages stemming from bad faith by defendants under 42 PA. CONS STAT. § 8371 (actions on insurance policies).

This court exercises subject-matter jurisdiction over plaintiff's claims following removal to the district court by defendants in accordance with 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1441 (actions removable generally), and 28 U.S.C. § 1446 (procedure for removal).

This action is governed by the substantive law of Pennsylvania.  For the following reasons, plaintiff's motion for summary judgment will be DENIED, and defendants' motion for summary judgment will be GRANTED in part, and DENIED in part.  All plaintiff's claims, except for the bad faith claim, survive defendants' motion for summary judgment.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff is and was at all times relevant to the present proceedings a practicing attorney licensed in the state of Pennsylvania.  (Plaintiff's Consolidated Statement of Undisputed Facts ("P.C.S.") at 2 (ECF No. 57).)  Plaintiff is a shareholder of the law firm Foster and Grubschmidt, P.C. (P.C.S. at 2 (ECF No. 57); Defendants' Combined Concise Statement of Material Facts ("D.C.S.") at 2 (ECF No. 58).)  Beginning in the 1990, until the time of her death in February 2002, plaintiff represented and provided legal counsel to Loretta Frances Wolf ("Wolf").  (P.C.S. at 2 (ECF No. 57); D.C.S. at 2 (ECF No. 58).)   Plaintiff drafted and executed a power of attorney for Wolf on or about May 17, 1995, wherein Louella Yavorka ("Yavorka") was named as Wolf's attorney-in-fact.  (P.C.S. at 2 (ECF No. 57); D.C.S. at 2 (ECF No. 58).)

As drafted by plaintiff, the power of attorney included a release of liability for legal counsel, and incorporated a "General Grant of Broad Powers," which provided:

> My Attorney is hereby given the fullest possible powers to act on my behalf when I am not available or cannot act on my behalf: to transact business, make, execute and acknowledge all agreements, contracts, orders, deeds, writings, assurances and instruments for any matter, with the same powers and for all purposes with the same validity as I could, if personally present.

(P.C.S. at 18 (ECF No. 57); D.C.S. at 2, 40 (ECF No. 58).)  Also incorporated within the document was the clause, "Specific Powers Included in General Power," which read as follows:

> Without limiting the general powers hereby already conferred, my Attorney shall have the following specific powers . . .

2

(a) To make limited gifts.  My Attorney may make gifts on my behalf to any donees and in such amounts as my Attorney may decide subject to the following:

(i) The class of permissible donees shall consist solely of my spouse, my children, my grandchildren and my great grandchildren (including my Attorney if my Attorney is a member of such class).

(P.C.S. at 18–19 (ECF No. 57); D.C.S. at 3 (ECF No. 58).)  Wolf's husband preceded her in death, she had no issue, and Yavorka was not within any of the aforementioned classes of donees at the time the power of attorney was drafted.  (P.C.S. at 19 (ECF No. 57); D.C.S. at 3 (ECF No. 58).)  These circumstances remained unchanged at the time of Wolf's death.

Prior to September 8, 2000, Yavorka asked plaintiff whether it would be possible to create a charitable trust in Wolf's name.  (P.C.S. at 20 (ECF No. 57); D.C.S. at 4–5 (ECF No. 58).)  Yavorka was uncertain whether the power of attorney granted her the authority to create the trust.  (P.C.S. at 20 (ECF No. 57); D.C.S. at 5 (ECF No. 58).)  On September 8, 2000, plaintiff replied with a letter and memorandum exploring the law applicable to Yavorka's question.  (P.C.S. at 20–21(ECF No. 57); D.C.S. at 5 (ECF No. 58); ECF No. 45-1.)  In the memorandum, plaintiff explained that the "General Grant of Broad Powers" would allow her to create the trust, but that the "Specific Powers Included in General Power" clause could allow the appropriateness of the trust to be called into question by future beneficiaries of the Wolf estate, particularly if the clause was given effect.  (P.C.S. at 20–21(ECF No. 57); D.C.S. at 6 (ECF No. 58).)  In his memorandum, plaintiff concluded that Yavorka likely had the authority to create the trust.  (P.C.S. at 20–21(ECF No. 57); D.C.S. at 6 (ECF No. 58).)  He cautioned that the wording of the power of attorney could allow the trust to be challenged, and that his interpretation of the law could be incorrect.  In plaintiff's  accompanying letter, he, however, indicated that he was

ninety-nine percent certain of Yavorka's authority.  (ECF No. 45-7 at 2.)  Yavorka later stated

that she went through with the creation of the trust: "Because [plaintiff] did some research on it

and came back and said that it . . . looked like it would be fine.  We took it to Merrill Lynch, and

they agreed.  They were comfortable with it, so I felt comfortable with it."  (P.C.S. at 25–26

(ECF No. 57); D.C.S. at 16 (ECF No. 58); ECF No. 45-6 (Dep. of Louella Yavorka, Nov. 6,

2006) at 6–7.)

Yavorka was named the executrix of Wolf's estate in Wolf's last will and testament, and

assumed the position on April 12, 2002, following Wolf's death.  (P.C.S. at 3 (ECF No. 57);

D.C.S. at 7 (ECF No. 58).)  Plaintiff provided legal counsel to Yavorka during her time as

executrix.  (P.C.S. at 3 (ECF No. 57); D.C.S. at 7 (ECF No. 58).)  Following the filing of a final

account and amended final account for the estate, objections filed by beneficiaries of the estate

resulted in a trial in the Orphan's Division of the Court of Common Pleas of Allegheny County,

Pennsylvania in December 2006.  (P.C.S. at 3–4 (ECF No. 57); D.C.S. at 7–8, 10 (ECF No. 58).)

Plaintiff represented Yavorka at the trial.  (ECF No. 45-4 at 3.)  The state trial judge issued an

unfavorable decision on August 7, 2007, removing Yavorka as executrix of the estate, precluding

plaintiff from acting as the alternate executor as provided in Wolf's will, and surcharging

Yavorka for certain expenditures by the estate at Yavorka's direction as Wolf's attorney-in-fact.

(P.C.S. at 4 (ECF No. 57); D.C.S. at 10, 13 (ECF No. 58); ECF No. 45-4 at 3.)

The expenditures surcharged by the state trial judge were all made after March 31, 2000,[1]

and totaled more than $1.8 million.  (P.C.S. at 22 (ECF No. 57); D.C.S. at 10 (ECF No. 58).)

This total was revised down to $1.65 million following the filing of exceptions by Yavorka on

August 27, 2007.  (P.C.S. at 22 (ECF No. 57); D.C.S. at 16, 18 (ECF No. 58).)  Both surcharges,

---

[1]     The state trial judge determined that following this date, Wolf had "lost her ability to make independent decisions."  (P.C.S. at 19–20 (ECF No. 57); ECF No. 45-4 at 7.)

however, included $74,341.00[2] paid to plaintiff during his time as counsel for the Wolf estate. (P.C.S. at 4, 22 (ECF No. 57); D.C.S. at 10, 18 (ECF No. 58).) In explaining his decision in the first opinion, the state trial judge reasoned that – with respect to the "Specific Powers Included in General Power," in the power of attorney document – Wolf's failure to note the inconsistencies between this provision and the lack of potential donees provided therein, and to have this inconsistency corrected at signing, was an indication that Wolf "was at that time in the beginning stages of weakened intellect." (P.C.S. at 23 (ECF No. 57); D.C.S. at 12 (ECF No. 58); ECF No. 45-4 at 4–5.) The state trial judge specifically held:

> The court has concluded that the power of attorney authorized the actions which [Yavorka] undertook to give *gifts* on [Wolf's] behalf.
> . . . .
> . . . [Wolf] had sufficient mental capacity to authorize . . . Yavorka to make gifts on her behalf. Therefore, the transactions undertaken on or before March 31, 2000 were without "taint of undue influence or deception."

(ECF No. 45-4 at 9) (emphasis added) (quoting In Re Estate of Clark, 359 A.2d 777, 780 (Pa. 1976).) Expenditures after March 31, 2000, however, were not shown to be without the taint of the exercise of undue influence by Yavorka while Wolf was in her weakened mental state and were therefore improper. (P.C.S. at 23 (ECF No. 57); D.C.S. at 10–11 (ECF No. 58); ECF No. 45-4 at 9.)

> The poor administration of the estate is a just basis for surcharges by way of forfeiture of all fees claimed for [Yavorka's] services as well as the losses addressed herein. The attorney fees claimed in the accounts will be denied . . . .
> The Loretta Frances Wolf Foundation Charitable Trust created under the Power of Attorney after March 31, 2000 was not properly executed by . . . Yavorka, and she did not prove by clear and convincing evidence that she had the authority to establish such a *trust*. The remaining assets in the trust will be returned to the estate, and the trust will be terminated.

(ECF No. 45-4 at 10 (emphasis added).)

---

[2]    Of the amount surcharged to Yavorka for plaintiff's fees, $8,000.00 were categorized by the state trial judge as gifts, $11,341.00 as fees for plaintiff's assistance in the creation of the charitable trust, and $55,000.00 as estate administration fees. (P.C.S. at 22 (ECF No. 57); D.C.S. at 10 (ECF No. 58).)

Subsequent to the state trial judge's first opinion finding Yavorka liable for expenditures by the estate, but prior to the downward revision of the eventual total liability in a second opinion, plaintiff sent a letter to Yavorka on August 9, 2007, stating as follows:

> [G]iven that you now have a potential claim against me if the matter is upheld, I believe that it would be prudent for you to seek new counsel. Although I do not believe that I committed any malpractice, the fact that the court has decreed that you are liable to the estate for the estate fee that was paid to me and for the amounts paid for the foundation, I am required to put my liability carrier[3] on notice. After doing such, it would not be proper for me to continue representing you.

(P.C.S. at 4–5 (ECF No. 57); D.C.S. at 14 (ECF No. 58); ECF No. 45-9 at 3.) Yavorka thereafter retained the services of attorney Russell Ressler ("Ressler") for representation regarding the Wolf estate. (P.C.S. at 5 (ECF No. 57).) In August 2007, shortly after agreeing to represent Yavorka, Ressler and plaintiff spoke about the status of Yavorka's case, potential claims against plaintiff for money paid directly to him by the Wolf estate, and for the remainder of Yavorka's liability for the charitable trust. The state trial judge issued an amended opinion and order reducing the amounts surcharged to Yavorka, but otherwise reiterating the same findings as those in the first opinion. (ECF No. 45-14; ECF No. 45-15.)

On January 30, 2008, plaintiff applied for an insurance policy with Westchester Fire Insurance Company. (P.C.S. at 8 (ECF No. 57); D.C.S. at 21–22 (ECF No. 58).) The application included the following language:

> IT IS IMPORTANT THAT YOU REPORT ANY CURRENTLY KNOWN CLAIMS OR CIRCUMSTANCES THAT COULD RESULT IN A CLAIM TO YOUR CURRENT INSURER. . . . WESTCHESTER FIRE INSURANCE COMPANY WILL NOT PROVIDE COVERAGE FOR CLAIMS OR INCIDENTS WHICH YOU ARE AWARE OF PRIOR TO THE INCEPTION DATE OF THIS COVERAGE IF OFFERED AND ACCEPTED.

---

[3]     Plaintiff's liability carrier at the time was Hudson Insurance Company, and the policy was effective during the period between February 9, 2007, and February 9, 2008. (P.C.S. at 24 (ECF No. 57); D.C.S. at 15 (ECF No. 58).) Plaintiff never reported any potential liability with respect to his work for the Wolf estate to the Hudson Insurance Company. (P.C.S. at 24–25 (ECF No. 57); D.C.S. at 15–16 (ECF No. 58).)

(P.C.S. at 27 (ECF No. 57); D.C.S. at 22 (ECF No. 58); ECF No. 45-2 at 2.)

> IMPORTANT NOTICE:  Failure to report any claim made against you during your current policy term, or facts, circumstances or events which may give rise to a claim against you or your current insurance company BEFORE expiration of your current policy term may create a lack of coverage.  Please see IMPORTANT NOTICE in Section VI.

(P.C.S. at 28 (ECF No. 57); D.C.S. at 22–23 (ECF No. 58); ECF No. 45-2 at 11.)

> IMPORTANT NOTICE:  All known claims and/or circumstances that could result in a Professional Liability claim are specifically excluded from coverage. Report all such claims and/or circumstances to your current insurer.  If any circumstance, act, error, or omission exists that could result in a professional liability claim, then such claim and/or any claim arising from such act, error, omission or circumstance is excluded from coverage that may be provided under this proposed insurance.  Further, failure to disclose such claim, act, error, omission or circumstance may result in the proposed insurance being void and/or subject to rescission.

(P.C.S. at 28 (ECF No. 57); D.C.S. at 23 (ECF No. 58); ECF No. 45-2 at 9.)  On the application,

plaintiff indicated that at that time he did not know of "any circumstance, situation, act, error or

omission that could result in a professional liability claim or suit against the firm or its

predecessor firm(s) or any of the current or former members of the firm or its predecessor

firm(s)."  (P.C.S. at 8–9 (ECF No. 57); D.C.S. at 21 (ECF No. 58); ECF No. 45-2 at 9.)  Plaintiff

did later acknowledge that at the time of application he thought that Yavorka might make a claim

for return of the fees and gifts paid to him, but that such a claim was not a professional liability

claim[4].  (P.C.S. at 9–10 (ECF No. 57); D.C.S. at 37 (ECF No. 58); ECF No. 41-2 at 100.)

Pursuant to the submission of this application, Westchester issued a professional liability

insurance policy to plaintiff covering the period from February 9, 2008, to February 9, 2009.

---

[4]      The insurance policy also excluded from coverage claims seeking "the return of fees or other consideration paid to the Insured," and "[s]eeking restitution, reduction, disgorgement, set off, return, or payment of any form of legal fees, related fees, or any other costs, expenses, or charges."  (P.C.S. at 29–30 (ECF No. 57); D.C.S. at 27 (ECF No. 58); ECF No. 41-3 at 8–9.)

(P.C.S. at 11–13, 29 (ECF No. 57); D.C.S. at 24 (ECF No. 58); ECF No. 41-3.) The issued

policy contained the following language:

Section 1 – Coverage

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured during the Policy Period and first reported to the Company during the Policy Period or within thirty (30) days therafter [sic], arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured or any entity or individual for whom the Named Insured is legally liable; provided always that such act, error, omission, or Personal Injury happens:

A.   during the Policy Period; or
B.   prior to the Policy Period provided that:
   1.   such act, error, omission or Personal Injury happened on or after the Retroactive Date[5] as indicated on the Declarations Page of this policy; and
   2.   at the inception of this policy the Insured had no *reasonable basis to believe* that any Insured had breached a professional duty and no *reasonable basis to believe* an act, error, omission or Personal Injury might be expected to result in such Claim or Suit.

(P.C.S. at 11–12 (ECF No. 57); D.C.S. at 25–26 (ECF No. 58); ECF No. 41-3 at 5 (emphasis

added).) Lastly, the policy indicated that the while Westchester had the duty to defend plaintiff

in any suit seeking damages covered by the insurance policy, regardless of the merits of the

claims; the "Company shall have no duty to defend the Insured against any Suit seeking

Damages to which this insurance does not apply." (P.C.S. at 14 (ECF No. 57); D.C.S. at 28

(ECF No. 58); ECF No. 41-3 at 5.)

     Following the state trial judge's entering a second judgment against Yavorka, and a failed

appeal to the Superior Court of Pennsylvania, Ressler again spoke with plaintiff on June 4, 2008.

(P.C.S. at 8, 14 (ECF No. 57); D.C.S. at 20, 29 (ECF No. 58).) At that time he informed plaintiff

that he should reimburse Yavorka for the amounts surcharged by the state trial judge for her

---

[5]   The Retroactive Date for Westchester's policy was February 9, 1996. (P.C.S. at 16 (ECF No. 57).)

handling of the Wolf estate. (P.C.S. at 14 (ECF No. 57).) That same day, following this conversation, plaintiff put Westchester and Plus Companies[6] on notice that he may be subject to a malpractice suit. (P.C.S. at 14 (ECF No. 57); D.C.S. at 28–29 (ECF No. 58); ECF No. 45-16.) In a letter dated July 30, 2008, Westchester and Plus Companies informed plaintiff that if he had violated the terms of the insurance policy, Yavorka's claim would not be covered. (P.C.S. at 30 (ECF No. 57); ECF No. 45-20 at 5–6.) In a subsequent letter dated October 21, 2008, Westchester and Plus Companies informed plaintiff that, following a review of documents submitted by plaintiff with respect to his legal counsel to Yavorka, plaintiff was not covered by his insurance policy, and there was no duty to defend plaintiff, because he had a reasonable basis to believe that his acts, errors or omissions created a potential claim against him prior to the inception of his insurance policy. (P.C.S. at 17, 31–32 (ECF No. 57); D.C.S. at 33–34 (ECF No. 58); ECF No. 45-22.)

On the recommendation of Ressler, Yavorka hired new counsel for the purpose of filing a malpractice suit against plaintiff. (P.C.S. at 31 (ECF No. 57); D.C.S. at 38 (ECF No. 58).) Yavorka filed a formal complaint in the Court of Common Pleas of Allegheny County on April 30, 2009, seeking damages in the amount of the surcharges ordered by the state trial judge and claiming professional negligence by plaintiff in the course of his legal representation of Yavorka and the Wolf estate while Yavorka was attorney-in-fact. (P.C.S. at 17 (ECF No. 57); D.C.S. at 34 (ECF No. 58); ECF No. 1-2.) Plaintiff sent another letter to Westchester and Plus Companies on May 4, 2009, informing them about the pending malpractice action against him, and demanding that they provide him with representation for his defense. (P.C.S. at 18 (ECF No. 57); D.C.S. at 35 (ECF No. 58); ECF No. 45-23.) In a letter dated May 13, 2009, Westchester and Plus Companies asserted that the action was not covered by plaintiff's policy and refused to

---

[6]         Plus Companies administered the policy issued to plaintiff by Westchester. (P.C.S. at 8, 11 (ECF No. 57).)

provide aid in his defense.  (P.C.S. at 32 (ECF No. 57); D.C.S. at 36 (ECF No. 58); ECF No. 45-24.)

Plaintiff filed an action against Westchester and Plus Companies in the Court of Common Pleas of Allegheny County on September 30, 2009, seeking a declaratory judgment requiring that Westchester and Plus Companies abide by the terms of the insurance policy, and seeking damages for breach of contract and bad faith.  (ECF No. 1-3 at 3.)  Westchester and Plus Companies removed the case to the United States District Court for the Western District of Pennsylvania on October 30, 2009, on the basis of diversity of jurisdiction.  (ECF No. 1.) Westchester and Plus Companies filed their answer on November 6, 2009.  (ECF No. 5.)  Cross-motions for summary judgment followed.  (ECF No. 39; ECF No. 42.)  The matter was fully briefed.

III.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides in relevant part:

**(a) Motion for Summary Judgment or Partial Summary Judgment.**

A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The  court should state on the record the reasons for granting or denying the motion.

. . . .

**(c) Procedures.**

**(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or  declarations, stipulations (including those made for

> purposes of the motion only), admissions, interrogatory answers,
> or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce  admissible evidence to support the fact.

FED. R. CIV. P. 56.

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the burden of proof
> at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S.

317, 322–23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) (citing

Anderson, 477 U.S. at 248–52; Celotex Corp., 477 U.S. at 322–26) ("A genuine issue is present

when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor

of the non-moving party in light of his burden of proof.").   The Supreme Court held in Celotex

Corp. that:

> In cases like the instant one, where the nonmoving party will bear the
> burden of proof at trial on a dispositive issue, a summary judgment motion
> may properly be made in reliance solely on the "pleadings, depositions,
> answers to interrogatories, and admissions on file."  Such a motion,
> whether or not accompanied by affidavits, will be "made and supported as
> provided in this rule," and Rule 56(e) therefore requires the nonmoving
> party to go beyond the pleadings and by her own affidavits, or by the
> "depositions, answers to interrogatories, and admissions on file,"
> designate "specific facts showing that there is a genuine issue for trial."

Celotex Corp., 477 U.S. at 324 (emphasis added).  There must be "sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable, or is not significantly probative,  summary judgment may be granted."  <u>Anderson</u>, 477

U.S. at 249-50 (citations omitted).  The United States Supreme Court later emphasized:

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent
> must do more than simply show that there is some metaphysical doubt as to the
> material facts . . . . Where the record taken as a whole could not lead a rational
> trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 586–87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most

favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

in favor of the nonmoving party.  <u>Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.</u>, 248 F.3d

129, 130 (3d Cir. 2001); <u>Doe v. County of Centre</u>, 242 F.3d 437, 446 (3d Cir. 2001); <u>Heller v.</u>

<u>Shaw Indus., Inc.</u>, 167 F.3d 146, 151 (3d Cir. 1999).  A court must not engage in credibility

determinations at the summary judgment stage.  <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>,

142 F.3d 639, 643 n.3 (3d Cir. 1998).


## IV.  DISCUSSION

In his motion for summary judgment, plaintiff asks the court to find that he is entitled to a

defense against Yavorka's malpractice action by defendants, damages arising from Weschester's

failure to fulfill its contractual duty to defend, and damages for bad faith in failing to defend.

(ECF No. 40; ECF No. 49; ECF No. 53.)  Defendants argue that plaintiff's claims are without

merit, and that Westchester and Plus Companies are entitled to summary judgment.  (ECF No.

43; ECF No. 46; ECF No. 54.)

With regard to a declaratory judgment affirming Westchester and Plus Companies' duty

to defend plaintiff against Yavorka's malpractice claim, plaintiff asserts that he is entitled to

summary judgment because he had no reasonable basis to believe that a malpractice claim was forthcoming due to his representation of Yavorka and the Wolf estate. "[T]he purpose of the Declaratory Judgments Act is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." Keystone Aerial Surveys, Inc. v. Pa. Prop. & Cas. Ins. Guar. Ass'n, 777 A.2d 84, 88 (Pa. Super. Ct. 2001) (quoting Juban v. Shermer, 751 A.2d 1190, 1193 (Pa. Super. Ct. 2000)). In seeking relief with respect to the existence of insurance coverage, the burden is on plaintiff to prove those facts essential to his or her cause of action, as it is with other civil actions. Benjamin v. Allstate Ins. Co., 511 A.2d 866, 868 (Pa. Super. Ct. 1986). The onus is on the plaintiff to establish that a claim is within the limits of coverage provided by a particular policy. Id.; see Smith v. Cont. Cas. Co., No. 07–CV–1214, 2008 WL 4462120, at *9 (M.D. Pa. Sept. 30, 2008) ("The insured has the initial burden of establishing coverage under the policy.").

In Pennsylvania an insurance company is bound to defend an insured party whenever a complaint filed against the insured might potentially come within the limits of a policy's coverage. Coregis Ins. Co. v. City of Harrisburg, No. Civ.A. 1:03-CV-920, 2005 WL 2179734, at *4 (M.D. Pa. Sept. 9, 2005) (citing Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985), and Britamco Underwriters, Inc. v. Weiner, 636 A.2d 649, 651 (Pa. Super. Ct. 1994)). The insurer's duty to defend is established solely by the allegations present within the complaint against the insured. Id. (citing Pacific Indem. Co., 766 F.2d at 760). The duty cannot be disclaimed unless, or until such time as, the insurer can "confine the claim to a recovery that is not within the scope of the policy." Id. (quoting Pacific Indem. Co., 766 F.2d at 760).

To determine the scope of a policy, a court will look only to the policy. "The fundamental rule in construing a contract is to ascertain and give effect to the intention of the

parties." MDL Capital Mgmt., Inc. v. Fed. Ins. Co., Nos. 05cv1396, 06cv0389, 2008 WL 2944890, at *11 (W.D. Pa. July 25, 2008) (citing Lower Frederick Twp. v. Clemmer, 543 A.2d 502 (Pa. 1988)). The parties' intentions are gleaned from the terms of the documents, unless the terms are ambiguous. Id. at *11-12. Ambiguity exists when a policy term, viewed against the policy as a whole, is "reasonably susceptible of different constructions and capable of being understood in more than one sense." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004) (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)). Any doubt or ambiguity with respect to the insurer's duty to defend is to be resolved in favor of the insured. Blocker v. Aetna Cas. & Sur Co., 332 A.2d 476, 478 (Pa. Super. Ct. 1975). If a policy's language, however, is clear and unambiguous, the language must be enforced as written, according to its plain and ordinary meaning. Pilosi, 393 F.3d at 363; Pacific Indem. Co., 766 F.2d at 760–61. Policies should not be construed so as to create ambiguities where none existed. Pilosi, 393 F.3d at 363; see Britamco Underwriters, 636 A.2d at 651 ("[A]n insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.").

Where exclusions within a policy are averred to relieve an insurer of its duty to defend, the exclusions must be "clearly worded," and "conspicuously displayed." An insured's failure to read or understand the significance of the limitations, however, is not relevant. Id.; Coregis Ins. Co., 2005 WL 2179734, at *5 (citing Pacific Indem. Co., 766 F.2d at 761). "[I]t is the insurer's burden to demonstrate that the exclusion applies." Brownstein & Washko v. Westport Ins. Corp., No. CIV.A. 01-4026, 2002 WL 1745910, at *3 (E.D. Pa. July 24, 2002) (citing Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D. Pa. 1993)); see Wagner v. Erie Ins. Co., 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002) ("When an insurer . . . relies on a policy exclusion as the basis for its

denial of coverage, it has asserted an affirmative defense and thus bears the burden of proving such a defense.").

The present case hinges upon the interpretation of exclusionary language within the application for the policy in question, and more importantly, the policy itself. The key language within the exclusionary clause which Westchester and Plus Companies argue exculpate them from any duty to defend plaintiff is whether "at the inception of this policy the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit." (P.C.S. at 11–12 (ECF No. 57); D.C.S. at 25–26 (ECF No. 58); ECF No. 41-3 at 5.)

The Court of Appeals for the Third Circuit has articulated a test to determine whether an insured party had a reasonable basis to believe in the existence of facts which would act to exclude policy coverage. In <u>Selko v. Home Insurance Co.</u>, the court explained:

> First, it must be shown that the insured knew of certain facts. Second, in order to determine whether the knowledge actually possessed by the insured was sufficient to create a "basis to believe," it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty.

139 F.3d 146, 152 (3d Cir. 1998). This test is both subjective and objective in nature. <u>Coregis Ins. Co.</u>, 2005 WL 2179734, at *7. The first part of the test requires the court to determine the insured's subjective knowledge of then-existing facts; the second part of the test requires the court to determine, objectively, what a reasonable lawyer possessed of the same knowledge would have concluded based upon the then-existing knowledge. <u>Id.</u>; <u>see</u> <u>Coregis Ins. Co. v. Baratta & Fenerty, Ltd.</u>, 264 F.3d 302, 306–09 (3d Cir. 2001) (applying the <u>Selko</u> test); <u>Colliers Lanard & Axilbund v. Lloyds of London</u>, 458 F.3d 231, 237–38 (3d Cir. 2006) (discussing the <u>Selko</u> test).

An insured's subjective belief that he was not subject to liability is nondispositive. Selko, 139 F.3d at 151; see Brownstein & Washko, 2002 WL 1745910, at *3 ("[An attorney] cannot assume that [a] claim will not be brought because he *subjectively* believes it is time barred or lacks merit." (emphasis original) (quoting Barratta, 264 F.3d at 307)); Mt. Airy Ins. Co. v. Thomas, 954 F. Supp. 1073, 1079–80 (W.D. Pa. 1997) (holding that subjective impressions and beliefs regarding whether a claim would be brought by a particular client are irrelevant). Otherwise, an insured could simply claim that he was ignorant of his duties and still be covered for violating his duties. Selko, 139 F.3d at 151. The burden is on the insurer, however, to prove what particular facts were known to the insured, and that based upon such facts, a reasonable lawyer in the same position would have concluded that liability was possible. Id. at 152.

With respect to plaintiff's subjective knowledge of the facts at the time of his application for, and eventual issuance of, insurance through Westchester, it was established that:

(1) plaintiff drafted a power of attorney on behalf of Wolf naming Yavorka as attorney in fact in May 1995;

(2) on September 8, 2000, plaintiff provided legal counsel to Yavorka with respect to the formation of a charitable trust in Wolf's name:

    a. plaintiff engaged in legal research and analysis of the power of attorney, and determined that the language therein created some doubt about whether Yavorka had the authority to establish a trust, and

    b. plaintiff informed Yavorka that despite the wording of the power of attorney, and subject to potential misinterpretation of the law, he was ninety-nine percent certain that Yavorka had the authority to establish a trust;

(3) Yavorka established the trust;

(4) following Wolf's death, Yavorka became executrix of the estate on April 12, 2002;

(5) beneficiaries of Wolf's estate filed objections to Yavorka's final accounting as executrix, and an eventual trial on the objections was held in December 2006;

(6) plaintiff was deposed by the beneficiaries' counsel regarding his advice to Yavorka about the charitable trust (ECF No. 45-5);

(7) in August 2007, the trial court found against Yavorka and in favor of the beneficiaries:

    a.  Yavorka was surcharged for $1.8 million relating to certain gifts made through her power as Wolf's attorney in fact and by the establishment of the charitable trust,

    b.  the surcharge also included all gifts and fees paid to plaintiff during the course of his legal counsel of Yavorka in the amount of $74,341.00,

    c.  the court determined that the power of attorney granted Yavorka authority to make gifts, but certain gifts were improper due to undue influence,

    d.  the court also determined that Yavorka failed to show properly that she had authority to create the trust,

    e.  the court noted that during her time as attorney in fact, Yavorka failed to keep adequate records, improperly executed the trust, and improperly administered the trust,

    f.  Yavorka was removed as executrix of the estate, and

    g.  plaintiff was not permitted to act as the alternate executor, despite provision for such in Wolf's will;

(8) following the release of the court's opinion, on August 9, 2007, plaintiff informed Yavorka that she should seek new counsel, because she may have a claim against him for fees and amounts paid for the foundation; although, he also stated the he did not feel as though he had committed malpractice;

(9) Yavorka filed exceptions to the state trial court's first opinion on August 27, 2007, wherein it was averred that in creating the charitable trust, she relied upon the advice of plaintiff (ECF No. 45-11 at 5); and,

(10) The state trial court judge issued an amended opinion in December 2007, reducing the surcharges against Yavorka, but otherwise reiterating the same holding found in the orphans' court's first opinion.

There are, however, still questions of fact with respect to what plaintiff subjectively knew that cannot be resolved here. Of particular relevance to the determination of plaintiff's subjective knowledge at the time of his application for insurance was his August 2007 conversation with Ressler. The general nature of the discussion between Ressler and plaintiff as Ressler was preparing to represent Yavorka is not disputed. Plaintiff, however, claims that Ressler questioned why plaintiff would notify his liability carrier about the judgment against Yavorka, and allegedly informed plaintiff that he had done nothing incorrect. (ECF Nos. 40 at 11; 45-3 at 8–9; 45-16 at 2–3.) Defendants contest this averment vociferously, pointing to a deposition of Ressler, in which Ressler states that though he conversed with plaintiff about the matter of the judgment against Yavorka, he never provided plaintiff with any advice regarding potential claims against plaintiff and whether he should notify his liability carrier. (ECF Nos. 43 at 12; 45-12 at 11–13, 17–20.) If a jury were to credit plaintiff's averment that Ressler advised him regarding the sufficiency of his representation of Yavorka, that testimony would support

plaintiff's ultimate position – that his subjective knowledge would not have led a reasonable attorney to come to a conclusion different than his own. The conflicting testimony of Ressler and plaintiff raise issues of credibility, which are issues that need to be resolved by a jury. There are genuine issues of material fact not amenable to disposition at summary judgment.

Plaintiff argues that in the state court opinions, the trial judge never directly condemned the representation and legal counsel provided by plaintiff to Yavorka, and never specifically cited error committed by plaintiff as a reason for the surcharges against Yavorka. (ECF No. 40 at 14.) Defendants contend that the state trial court judge found inconsistencies in the power of attorney drafted by plaintiff, and that these inconsistencies were known to plaintiff and forced plaintiff to research and conclude, erroneously, that despite the inconsistencies, Yavorka had the authority to create a charitable trust. (ECF No. 43 at 8–11.) The bulk of the eventual surcharges against Yavorka were the result of the existence of the trust – Yavorka relying upon plaintiff's incorrect advice leading to the trust's creation. (ECF No. 54 at 9.) The surcharges allegedly implied potential liability for malpractice that plaintiff should have recognized.

Clearly, the state trial court judge determined that Yavorka did not prove that she had authority to create the charitable trust. Yet, what also is clear by the wording of the state trial court judge's opinions is that the inconsistency in the power of attorney was in a provision of "Specific Powers Included in General Power," limiting gifts to a class of donees which did not actually exist. The state trial court did not otherwise indicate the existence of inconsistencies in the power of attorney, and did not appear to attribute this inconsistency to his determination that certain gifts be surcharged. It was only those gifts granted as a result of the exercise of undue influence by Yavorka that were surcharged. There was no indication that plaintiff's actions affected this portion of the determination. Regardless, the issue of Yavorka's inability to

establish before the state trial court that she had the authority to create a trust, in spite of plaintiff's advice to the contrary, creates questions of fact that cannot be resolved at summary judgment – whether plaintiff's advice was in error, whether this error prevented Yavorka from establishing before the state trial court that she had authority to create a trust, and whether there were actual indications that plaintiff's advice and conduct fell below accepted professional standards.

Accordingly, due to the issues of credibility the court cannot make findings as a matter of law about plaintiff's subjective knowledge of relevant facts. The first prong of the <u>Selko</u> test, therefore, was not established as a matter of law.

Consequently, the court need not discuss the objective prong of the <u>Selko</u> test at this time. Nevertheless, it is noteworthy that little authority was provided to this court to establish what a reasonable attorney would have concluded based upon plaintiff's subjective knowledge. General assertions by the parties that plaintiff's subjective knowledge of his conduct and the circumstances preceding his obtaining malpractice insurance would or would not have provided a reasonable attorney with a basis to believe in a potential claim is insufficient. In light of the above discussion, neither party is entitled to summary judgment with respect to defendants' duty to defend.

Next, plaintiff claims that he is entitled to summary judgment for breach of contract as a result of defendants' failure to recognize their duty to defend plaintiff in relation to Yavorka's malpractice claim. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." <u>McShea v. City of Phila.</u>, 995 A.2d 334, 340 (Pa. 2010) (quoting <u>Hart v. Arnold</u>, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)); <u>see</u>

McCabe v. State Farm Mut. Auto. Ins. Co., 36 F. Supp. 2d 666, 672 (E.D. Pa. 1999). As it cannot be determined at the summary judgment stage that plaintiff was covered by the policy at issue, the court cannot reach the issue of breach of contract; the duty owed, if any, has not yet been decided.

Finally, it is plaintiff's contention that defendants' denial of a duty to defend plaintiff was made in bad faith, and that summary judgment is appropriate in light of the established facts. In Pennsylvania, the statute governing bad faith in insurance related claims provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371.

A heightened burden of proof is required of a plaintiff seeking relief for bad faith: clear and convincing evidence. Lehman v. Victoria Fire & Cas. Ins. Co., Civil Action No. 09–1542, 2011 WL 2457928, at *6 (W.D. Pa. June 16, 2011) (citing Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005)). Clear and convincing evidence is evidence which is "so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Id. (quoting In re Sylvester, 555 A.2d 1202, 1203–04 (Pa. 1989)). At summary judgment, plaintiff's burden is "commensurately high." Id. (quoting Babayan, 430 F.3d at 137).

Bad faith claims are fact specific, and require an analysis of the insurer's conduct toward the insured. Id. (quoting Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 887 (Pa. Super. Ct. 2000)). By clear and convincing evidence, a plaintiff must show that: "(1) the insurer did not

have a reasonable basis for denying coverage, and (2) the insurer knew or recklessly disregarded its lack of reasonable basis." Id. at *7 (citing Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997)). Arguing negligence or incorrect analysis of the applicable law is insufficient. Id. "'To support a finding of bad faith, the insurer's conduct must be such as to "import a dishonest purpose." In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill-will.'" Greene v. United Services Auto. Ass'n, 936 A.2d 1178, 1188 (Pa. Super. Ct. 2007) (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004))( quoting Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1036 (Pa. Super. Ct. 1999)); see Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006).

To rebut a bad faith claim by a plaintiff, an insurer need only show that it "'conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.'" Lehman, 2011 WL 2457928, at *9 (quoting Cantor v. Equitable Life Assur. Soc'y of the United States, No. CIV. A. 97-CV-5711, 1999 WL 219786, at *3 (E.D. Pa. Apr. 12, 1999)). The insurer, however, does not need to show that its investigation "'yielded the correct conclusion or even that its conclusion more likely than not was accurate.'" Id. (quoting Cantor, 1999 WL 219786, at *3).

Here, plaintiff claims that defendants acted in bad faith, because policy coverage was denied solely on the basis of plaintiff's August 9, 2007 letter to Yavorka advising her to seek new counsel in light of a potential claim against plaintiff. (ECF No. 40 at 18.) To that end, it should first be noted that a letter containing what appears to be concerns about potential liability for malpractice and a need to inform an insurance carrier of that situation is certainly reasonable

grounds for defendants to believe plaintiff may not have been entirely truthful on his policy application.

It also should be noted that in a letter dated July 30, 2008, defendants informed plaintiff that the preliminary investigation, based upon review of the opinion of the state trial court, the exceptions filed, and the state trial court's amended opinion and order, indicated that plaintiff may have had a reasonable basis to believe – prior to his policy period – that a claim may be made against him regarding his representation of Yavorka. (ECF No. 45-20.) This preliminary finding was rendered prior to consideration of the August 9, 2007 letter, and accompanying the finding was a summary of defendants' analysis of plaintiff's case. (ECF No. 45-20.) At that point, defendants sought from plaintiff additional information in the way of all pleadings and other documents relating to the original action against Yavorka, Wolf's power of attorney, Wolf's will, trust documentation, Wolf's estate tax returns, all correspondence with Yavorka, and all correspondence with Wolf. (ECF No. 45-20 at 8.)

Most notably, however, plaintiff did not adduce any evidence of bad faith, ill-will, self-interest, or dishonest purpose in defendants' determination. (ECF No. 45-22). Plaintiff, bearing the burden of proof at trial with respect to establishing the essential elements of a bad faith claim, cannot rest solely upon his allegations to defeat defendants' motion for summary judgment as to this claim. Marten, 499 F. 3d at 295 (citing Celotex, 477 U.S. at 322-23). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . .'" Scott, 550 U.S. at 380 (quoting Anderson, 477 U.S. at 247-48)(emphasis in original). "'[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts. . . . '" <u>Id.</u> (quoting <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)).

Plaintiff failed to provide the evidentiary basis required to show the existence of a genuine issue of material fact to rebut defendants' motion, and fell far short of providing the clear and convincing evidence necessary to succeed on his own motion for summary judgment as to the bad faith claim. <u>See</u> <u>Lehman</u>, 2011 WL 2457928, at *6. The lack of proof establishing an essential element of a claim for which plaintiff ultimately bears the burden at trial entitles defendants to summary judgment. <u>See</u> <u>Celotex</u>, 477 U.S. at 323-24. Further, defendants supplied evidence tending to show that it "conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." <u>Green</u>, 936 A. 2d at 1188. Based upon the record evidence before this court, it is clear that no reasonable jury could find bad faith on the part of defendants. Under those circumstances, summary judgment will be granted in favor of defendants with respect to plaintiff's bad faith claim.

## V.   CONCLUSION

Based upon the foregoing discussion, the existence of questions of fact regarding the extent of plaintiff's subjective knowledge prior to applying for, and receiving, insurance from Westchester and Plus Companies precludes summary judgment with respect to defendants' duty to defend. As a result of the inability to determine what duty, if any, was owed to plaintiff, the issue of defendants' breach of contract cannot be resolved at the summary judgment stage. Lastly, due to plaintiff's failure to provide clear and convincing evidence of bad faith by defendants, the court finds defendants are entitled to summary judgment with respect to the bad faith claim.

Accordingly, the court will grant defendants' motion for summary judgment with respect to plaintiff's bad faith claim, and will deny defendants' and plaintiff's motions for summary judgment as to the remaining claims. An appropriate order follows.

By the court,

*s/ Joy Flowers Conti*
Joy Flowers Conti
United States District Judge

Dated: September 20, 2011.