**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN K. FOSTER, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Case No. 09-1459 |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY; THE PLUS COMPANIES, | ) | |
| INC.; and LOUELLA YAVORKA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

Pending before the court is a motion for "clarification or reconsideration" (the "motion for reconsideration") (ECF No. 62) filed by defendants Westchester Fire Insurance Company and The Plus Companies, Inc. ("moving defendants" or "defendant insurers"). The motion for reconsideration is styled as a motion filed under Federal Rule of Civil Procedure 54(b). Moving defendants request the court to reconsider its earlier decision denying moving defendants' motion for summary judgment in part. See Foster v. Westchester Fire Ins. Co., Civil Case No. 09-1459, 2011 WL 4382971 (W.D. Pa. Sept. 20, 2011). Moving defendants argue that the court in that decision erroneously placed the burden of proof and erred in determining there were factual disputes precluding the granting of summary judgment. Because moving defendants did not establish that the court clearly erred in its prior decision—but are merely quarreling with the prediction this court made (rightly or wrongly) about how the Pennsylvania Supreme Court would allocate the burden of proof—the court must deny the motion for reconsideration.

I. **Factual and Procedural Background**

This action involves claims by plaintiff John K. Foster III ("Foster") seeking (1)

enforcement of an insurance policy pursuant to the Pennsylvania Declaratory Judgments Act, 42

PA. CONS. STAT. §§ 7531-41, (2) damages resulting from an alleged breach of contract, and (3)

damages resulting from defendants' alleged bad faith in administering Foster's legal malpractice

insurance policy pursuant to 42 PA. CONS. STAT. § 8371 (actions on insurance policies).  For a

complete recitation of the relevant facts, refer to the court's memorandum opinion addressing the

cross-motions for summary judgment.  Foster, 2011 WL 4382971, at *1-6.  The facts collected

below represent the most important facts with respect to the pending motion for reconsideration.

At the time Foster applied for his insurance policy, he was aware that a court had

invalidated a trust created by a former client of his, defendant Louella Yavorka ("Yavorka"), at

great expense to her, and in apparent contradiction to his counsel that the creation of the trust

was probably permissible.  Id.

> Foster's insurance application included the following language:

> IT IS IMPORTANT THAT YOU REPORT ANY CURRENTLY KNOWN
> CLAIMS OR CIRCUMSTANCES THAT COULD RESULT IN A CLAIM TO
> YOUR CURRENT INSURER. . . . WESTCHESTER FIRE INSURANCE
> COMPANY WILL NOT PROVIDE COVERAGE FOR CLAIMS OR
> INCIDENTS WHICH YOU ARE AWARE OF PRIOR TO THE INCEPTION
> DATE OF THIS COVERAGE IF OFFERED AND ACCEPTED.

 Id. at *4.  It also provided:

> IMPORTANT NOTICE:  Failure to report any claim made against you during
> your current policy term, or facts, circumstances or events which may give rise to
> a claim against you or your current insurance company BEFORE expiration of
> your current policy term may create a lack of coverage.  Please see IMPORTANT
> NOTICE in Section VI.

Id.  The application further stated that known claims were specifically excluded:

> IMPORTANT NOTICE:  All known claims and/or circumstances that could result in a Professional Liability claim are specifically excluded from coverage. Report all such claims and/or circumstances to your current insurer.  If any circumstance, act, error, or omission exists that could result in a professional liability claim, then such claim and/or any claim arising from such act, error, omission or circumstance is excluded from coverage that may be provided under this proposed insurance.  Further, failure to disclose such claim, act, error, omission or circumstance may result in the proposed insurance being void and/or subject to rescission.

Id.

On the application, Foster indicated that at that time he did not know of "any circumstance, situation, act, error or omission that could result in a professional liability claim or suit against the firm or its predecessor firm(s) or any of the current or former members of the firm or its predecessor firm(s)."  Id.  Foster did later acknowledge that at the time of application he thought that Yavorka might make a claim for return of his fees relating to the later-invalidated trust, but that such a claim was not a professional liability claim.  Id.

Pursuant to the submission of this application, Westchester issued a professional liability insurance policy to Foster covering the period from February 9, 2008, to February 9, 2009.  Id. at *5.  The issued policy contained the following language:

### Section 1 – Coverage

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured during the Policy Period and first reported to the Company during the Policy Period or within thirty (30) days therafter [sic], arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured or any entity or individual for whom the Named Insured is legally liable; provided always that such act, error, omission, or Personal Injury happens:
>
> A.     during the Policy Period; or
> B.     prior to the Policy Period provided that:
>           1.     such act, error, omission or Personal Injury happened on or after the Retroactive Date as indicated on the Declarations Page of this policy; and

> 2.      at the inception of this policy the Insured had no *reasonable basis to believe* that any Insured had breached a professional duty and no *reasonable basis to believe* an act, error, omission or Personal Injury might be expected to result in such Claim or Suit.

Id. The policy indicated that the while Westchester had the duty to defend Foster in any suit seeking damages covered by the insurance policy, regardless of the merits of the claims; the "Company shall have no duty to defend the Insured against any Suit seeking Damages to which this insurance does not apply." Id.

Yavorka subsequently filed a malpractice suit against Foster. Id. at *6. Upon notice of the action by Foster, the moving defendants asserted that the action was not covered by Foster's malpractice policy and refused to defend him in the suit. Id. Foster filed this action in the Court of Common Pleas of Allegheny County on September 30, 2009, which was removed to this court by defendants on the basis of diversity jurisdiction. Id.

Following discovery, the parties filed cross-motions for summary judgment. (ECF Nos. 39 & 42.) On September 20, 2011, the court issued an opinion (ECF No. 60), followed by a separate order (ECF No. 61). The court denied plaintiff's motion for summary judgment, granted defendants' motion for summary judgment with respect to the insurance bad faith claim, and denied defendants' motion with respect to all other claims.

In its analysis of the issues, the court determined that the primary issue in determining whether the insurance policy applied to Yavorka's claim against Foster was whether subsection B.2 of the provision of coverage section of the insurance policy ("subsection B.2") had been triggered by Foster's knowledge at the time of his application about the invalidation of the trust created by Yavorka. Foster, 2011 WL 4382971, at *9. The issue was whether at the inception of the insurance policy, Foster had "no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury

4

might be expected to result in such Claim or Suit." Id.  The court determined that subsection B.2

constituted an exclusion from the policy and concluded, based upon precedent establishing that

exclusions from insurance policies are asserted as affirmative defenses by insurers, that the

burden of proof rested with defendants to demonstrate that the exclusion applies. Id. at *8-9.

After determining there were material factual disputes with respect to Foster's objective

knowledge at the time he applied for insurance with defendant insurers, and noting that

defendant insurers had introduced no evidence relating to the appropriate standard of care for

attorneys in Foster's field, the court concluded that the moving defendants had not met their

burden with respect to their asserted affirmative defense. Id. at *9-12.

　　　After the court entered its opinion and order disposing of the motions for summary

judgment, moving defendants filed the currently pending motion for reconsideration.  After the

issue was fully briefed, the court held oral arguments on the motion on December 13, 2011.  The

court gave its preliminary assessment of the motion for reconsideration, and indicated this

opinion would be forthcoming.  At the request of moving defendants, the court indicated it

would be amenable to the parties filing supplemental briefing, in light of the court's preliminary

assessment of the motion.  Foster filed a "memorandum regarding supplemental briefs" on

January 6, 2012, in which he argued supplemental briefing was unnecessary, but addressed the

merits of the motion for reconsideration.  On the same day, moving defendants submitted a letter

brief by hand-delivery to the court indicating that supplemental briefing was unnecessary.

Moving defendants likewise addressed the merits of the motion for reconsideration in their letter

brief, which the court subsequently granted leave to be filed as a supplemental brief (ECF No.

71) in light of plaintiff's filing of a substantially similar memorandum with the court.  (ECF No.

70.)

## II. Motion for Reconsideration Standard

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration under Federal Rule of Civil Procedure 59(e)[1] must therefore rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995). A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made. Williams v. Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). Litigants are cautioned to "evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Waye v. First Citizen's Nat'l Bank, 846 F. Supp. 310, 314 n.3 (M.D. Pa. 1994) (internal quotation omitted). Motions for reconsideration should not relitigate issues already resolved by the court and should not be used to advance additional arguments which could have been made by the movant before judgment. Reich v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993) aff'd in part, rev'd in part,

---

[1] Although this motion was brought under Rule 54(b), the court will consider it under the case law applied to Rule 59(e) motions. There is considerable confusion about which rule of civil procedure provides the basis for motions for reconsideration, but courts "tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e)." See A&H Sportswear Co. v. Victoria's Secret Stores, Inc., No. Civ.A. 94-7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001). The court will consider moving defendant's motion for reconsideration under the general principles of Rule 59(e), which provides for motions to alter and amend final judgments, even though it was brought under Rule 54(b), the text of which reaffirms the general principle that the trial court maintains inherent authority to reconsider interlocutory orders, such as the partial denial of a motion for summary judgment, so long as it retains jurisdiction over the case. Strictly speaking, district courts have more discretion in reconsidering interlocutory orders than in revising final judgments. See In re Anthanassious, 418 F. App'x 91, 95-96, 96 n.5 (3d Cir. 2011). That said, the law of the case doctrine guides courts to exercise their discretion with a light hand, even with respect to interlocutory orders, and only to grant motions for reconsideration in "extraordinary circumstances." In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 438-39 (3d Cir. 2009). The "extraordinary circumstances" enumerated by the Court of Appeals for the Third Circuit in Pharmacy Benefit Managers align neatly with the three categories listed above, under which courts will grant motions for reconsideration under Federal Rule of Civil Procedure 59(e).

57 F.3d 270 (3d Cir. 1995).

### III. Discussion

Moving defendants present two arguments in support of their motion for reconsideration.

First, they argue the court inappropriately placed the burden on defendant insurers to prove that

subsection B.2 excluded Yavorka's claim against Foster from the policy.  In that light, they argue

that subsection B.2's "provided that" language, because it is contained in the policy's "grant of

coverage" provision, is more properly characterized as a "condition precedent" to coverage, such

that it is properly Foster's burden to prove it does not apply.[2]

Second, moving defendants argue that the court erred in determining that there were

material factual disputes with respect to Foster's objective knowledge about Yavorka's potential

claim against him.  They argue that the disputed facts identified by the court in its earlier

opinion—(1) the content of a conversation Foster had with Yavorka's subsequent counsel (who

Foster alleges told him that there was no potential claim by Yavorka against him for his advice

vis-à-vis the trust), and (2) whether Foster's counsel to Yavorka actually amounted to legal

malpractice—were immaterial, and should not have precluded entry of summary judgment in

their favor.  Within this second argument, moving defendants argue that the court erred when it

indicated that the lack of expert testimony about standards of care in the legal practice was

---

[2] In seeking relief with respect to the existence of insurance coverage in Pennsylvania, the burden is on the plaintiff
to prove those facts essential to his or her cause of action, as it is with other civil actions.  Benjamin v. Allstate Ins.
Co., 511 A.2d 866, 868 (Pa. Super. Ct. 1986).  The onus is on the plaintiff to establish that a claim is within the
limits of coverage provided by a particular policy.  Id.; see Smith v. Cont. Cas. Co., No. 07–CV–1214, 2008 WL
4462120, at *9 (M.D. Pa. Sept. 30, 2008) ("The insured has the initial burden of establishing coverage under the
policy.").  Where exclusions within a policy are relied upon by the insurer to deny coverage, the exclusions will
effective if they are "clearly worded," and "conspicuously displayed."  Pacific Indem. Co. v. Linn, 766 F.2d 754, 761
(3d Cir. 1985).  An insured's failure to read or understand the significance of the limitations, however, is not
relevant.  Id.; Coregis Ins. Co., 2005 WL 2179734, at *5 (citing Pacific Indem. Co., 766 F.2d at 761).  "[I]t is the
insurer's burden to demonstrate that the exclusion applies."  Brownstein & Washko v. Westport Ins. Corp., No.
CIV.A. 01-4026, 2002 WL 1745910, at *3 (E.D. Pa. July 24, 2002) (citing Allstate Ins. Co. v. Brown, 834 F. Supp.
854, 857 (E.D. Pa. 1993)); see Wagner v. Erie Ins. Co., 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002) ("When an
insurer . . . relies on a policy exclusion as the basis for its denial of coverage, it has asserted an affirmative defense
and thus bears the burden of proving such a defense.").

relevant to its decision to deny summary judgment.  They argue the court should have performed the task of determining such standards of care.

The court will address the two arguments in order.

### A.  The Court's Allocation of the Burden of Proof

Moving defendants' first argument is brought under the third ground by which a court may be moved to reconsider its earlier decision under Rule 59(e).  Because moving defendants did not provide the court with any mandatory authority indicating that a provision which is exclusionary on its face, but which is contained in the general grant of coverage of an insurance policy, is not an exclusion, moving defendants have not met their burden of demonstrating clear error.  Instead, they are attempting to relitigate an issue already resolved by the court (rightly or wrongly).

The court in determining the substantive law with respect to this diversity action was required to apply the law of Pennsylvania.  The court accurately reviewed the burdens of proof in insurance disputes in Pennsylvania, indicating the insured must initially establish coverage under the policy, and the insurer has the burden with respect to any exclusions.  The court then determined that the language of subsection B.2 was an exclusion, and allocated the burden of proof accordingly.  The seminal issue was whether conditional, limiting language in the grant of coverage was an exclusion or was some other creature of insurance law (such as the "condition precedent" found to exist in other jurisdictions), on which the insured would have the burden of proof.  The court could find no clear directive from the Pennsyvlania Supreme Court or from the Court of Appeals for the Third Circuit predicting how the Pennsylvania Supreme Court would rule on that issue.  In the absence of such authority, this court was required to make a prediction

about how the Pennsylvania Supreme Court would rule on the issue.  In light of Pennsylvania's

"treat[ment of] the insured with great liberality," Daburlos v. Commercial Ins. Co. of Newark,

N.J., 521 F.2d 18, 24 (3d Cir. 1975), the court determined that the provision was an exclusion

notwithstanding its placement within the general grant of coverage.

With respect to the first basis, moving defendants presented the court with no authority

sufficient to meet the high standards of clear error warranting the granting of a motion for

reconsideration.  Moving defendants alerted the court to several factually similar cases in other

jurisdictions, where courts had concluded that the burden of proof should be placed on the

insured to establish the nonapplicability of conditional, limiting language, similar to subsection

B.2, in grant of coverage clauses.  See, e.g., Bryan Brothers Inc. v. Cont'l Cas. Co., 660 F.3d

827, 830-31 (4th Cir. 2011) (holding a prior knowledge provision which stated that coverage was

granted "provided that" no insured had prior knowledge of the act or omission was a "condition

precedent" as opposed to an "exclusion"); Gulf Underwriters Ins. Co. v. City of Council Bluffs,

755 F. Supp. 2d 988, 1008-09 (S. D. Iowa 2010) (holding a policy provision located in the

"insuring agreement," which provided that coverage was available, "provided that" the insured

did not have prior knowledge was "not an exclusion, but rather a condition of coverage" on

which the insured would have the burden of proof).  Those decisions rely on or predict state law

in jurisdictions other than Pennsylvania.  While persuasive in a limited sense, those decisions do

not inform this court with finality regarding how the Pennsylvania Supreme Court would rule on

the issue.  Moving defendants further argue that the decision in State Farm Fire & Casualty Co.

v. Estate of Mehlman, 589 F.3d 105 (3d Cir. 2009) (applying Pennsylvania law), is controlling.

That case, however, involved an "occurrence" policy, where the grant of coverage was limited to

damage caused by an accident.  Id. at 111.  Estate of Mehlman does not inform the court how to

construe a "provided that" provision in an insurance agreement, such as subsection B.2.

      At least one other district court in Pennsylvania addressed the same argument raised by

moving defendants and concluded that "it is irrelevant under what heading in the Policy the

insurer chooses to place the exclusion."  Titan Indem. Co. v. Cameron, No. CIV.A. 01-5435,

2002 WL 1774059, at *11 n.12 (E.D. Pa. July 30, 2002).  The Titan decision relies on the Court

of Appeals for the Third Circuit's decision in Daburlos, where the policy granted coverage

"provided that" certain conditions were met.  521 F.2d at 21.  There, the court of appeals

construed that clause as an "exclusion" and placed the burden of proof on the defendant.  Id. at

24-25.  Other courts similarly have concluded that the placement of an exclusionary provision is

immaterial.  See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1205 (2d

Cir. 1995) ("[U]nder New York law, the exclusionary effect of policy language, not its

placement, controls allocation of the burden of proof.").[3]

      Moving defendants' argument, at best, presents this court with a split in authority on how

it should allocate the burden with respect to subsection B.2.  Moving defendants have not

presented the court with any decision involving similar facts, construing Pennsylvania law,

which would clearly establish the court's previous determination was erroneous.  Such second-

guessing is not a proper basis for a motion to reconsider.  Williams v. Pittsburgh, 32 F. Supp. 2d

236, 238 (W.D. Pa. 1998).  In the absence of clear, mandatory authority on the issue, and

because the court finds support for its conclusion in other decisions within the Third Circuit,

especially relying on the decision in Daburlos, the court will not reconsider its earlier decision,

which it already made (rightly or wrongly).

---

[3] Moving defendants correctly point out that the Court of Appeals of New York has limited the holding of
Stonewall, but its reasoning is nonetheless persuasive.  Consol. Edison Co. of N. Y. v. Allstate Ins. Co., 98 N.E.2d
687, 691 (N.Y. 2002).

The court notes that courts in Pennsylvania grant insureds the benefit of the doubt in construing policy provisions, especially when an ambiguity exists. See Betz v. Erie Ins. Exch., 957 A.2d 1244, 1253 (Pa. Super. Ct. 2008).   Were the court to undertake its analysis ab initio, even if the law of Pennsylvania generally placed the burden of proving provisos such as subsection B.2 on the insured, the court would still consider allocating the burden on the moving defendants.  The application for the policy contains multiple provisions (quoted above) which indicate to the applicant that "known claims and/or circumstances that could result in a Professional Liability Claim" are excluded from coverage.  Such language in the application may be a sufficient basis for the court to determine that the "reasonable expectation of the insured," which is the "proper focus regarding issues of coverage under insurance contracts," was that subsection B.2 should be construed as an exclusion.  Betz, 957 A.2d at 1253.

**B.  The Court's Assessment that Material Issues of Fact Precluded Summary Judgment**

Moving defendants' second argument does not fall within one of the three permissible categories of motions for reconsideration.  Moving defendants merely assert that the facts which the court already determined are materially in dispute are immaterial, and given their determination as to immateriality, "request clarification of the Opinion as to what disputed facts remain that prevent judgment being render as a matter of law [and that] [i]f no such facts remain, as the Defendant Insurers believe, they request reconsideration of the Court's denial in part of the Defendant Insurer's motion for summary judgment." (Defs.' Br. (ECF No. 63) at 2.)   The court already informed the parties what facts it believes preclude summary judgment, and a motion for reconsideration is not properly grounded as a request that the court rethink a decision it has already made.  The court concluded that there was a dearth of information in the record

regarding Foster's knowledge of his actions, and his standard of care in counseling Yavorka. Because the burden of proof was on moving defendants, the court denied their motion for summary judgment.

Moving defendants' indication that the court erred by not undertaking to determine itself whether Foster's conduct in representing Yavorka should have given him notice of an impending claim is unavailing, as the court's consideration of the evidence is not susceptible to second-guessing on a motion for reconsideration. Merely because other courts have been sufficiently persuaded without expert opinion in similar declaratory judgment cases does establish that it was clear error for this court to note that expert opinion would have perhaps helped it determine whether moving defendants had met their burden of proof, such that no reasonable jury could find they had failed to establish their affirmative defense. Moving defendants did not point to any learned treatise, practice manual, case law, or other source from which the court could discern the applicable standard of care without the assistance of expert testimony on the matter.

## IV. Conclusion

Moving defendants did not establish that the court's prior decision was clearly erroneous. They merely dispute the legal analysis previously undertaken by the court. Because neither of the grounds asserted by moving defendants establishes clear error of law, the court will deny the motion for reconsideration.

## *ORDER*

**AND NOW**, this 26th day of June 2012, upon consideration of parties' filings and upon review of this court's memorandum opinion and order dated September 20, 2011, and for the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion for clarification or reconsideration (ECF

No. 62) filed by defendants Westchester Fire Insurance Company and The Plus Companies, Inc.

is **DENIED**.


By the court,

 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge